UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | 19 Cr. 402 (NGG) |
| Ruslan Asainov : | |

# MOTION TO COMPEL DISCLOSURE OF GOVERNMENT'S
# EX PARTE CIPA SECTION 4 SUBMISSION

Mr. Ruslan Asainov moves, pursuant to Section (F) of the Standing Order on Discovery and Federal Rule of Criminal Procedure 16(d), for an order requiring the government to produce to defense counsel the materials referenced in the government's *ex parte* CIPA filing (ECF Nos. 44, 45). (The government has not filed a half-sheet noting the actual filing of its *ex-parte* CIPA section 4 filing).

## INTRODUCTION

Mr. Ruslan Asainov requests that his cleared counsel have access to the government's motion pursuant to Section 4 of the Classified Information Procedures Act ("CIPA") to file its Section 4 application *ex parte*. Specifically, Mr. Asainov asks that the Court compel the government to produce to the defense the materials referenced in ECF Nos. 44 and 45, Notice of Classified Filing, i.e., CIPA section 4. At the very least, the government should be required to disclose to cleared defense counsel its legal arguments in support of the CIPA 2 application.

In submitting this request, we note that any "methods and means" which the defense expects the government has argued call for CIPA protection are dated and thus, could jeopardize national security if they were disclosed to cleared counsel. Moreover, the disclosure would be limited to cleared counsel and review of the document could take place in a Sensitive Compartmented Information Facility ("SCIF").

# THE CLASSIFIED INFORMATION PROCEDURES ACT

### *The Principles Governing CIPA § 4*

Section 4 of CIPA permits the government to delete, summarize, or substitute specified items of classified information before providing the items in discovery, but only "upon a sufficient showing" that full production would pose a reasonable danger to national security. 18 U.S.C. app. 3 § 4. *See also United States v. Abu-Jihaad,* 630 F.3d 102, 141 (2d Cir. 2010) (the state secrets privilege to withhold information applies under CIPA Section 4 only if "there is a reasonable danger that compulsion of evidence will expose. . .matters which, in the interest of national security, should not be divulged.").

The Second Circuit has developed a four-step test for evaluating a government application to delete or substitute information under Section 4. *See United States v. Aref,* 533 F.3d 72, 80 (2d Cir. 2008).

### *Whether the information is classified.*

The first step requires the court to determine whether the information is classified.

"Classified information" is defined as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. app. 3 §1(a). Classification may be established by the affidavit of a government official, so long as the affidavit "adequately describes the reasons for the information's classification and the harm that would result from disclosure." *United States v. Juma Khan,* No. 08 CR 621 (NRB), 2010 WL 330241, at *1 (S.D.N.Y. Jan. 20, 2010).

### *Whether the information is discoverable.*

If the information is classified, the Court must determine whether it is discoverable.

CIPA does not change the government's discovery obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) or the Federal Rules of Criminal Procedure, nor does it alter the Federal Rules of Evidence. *See, e.g., United States v. Libby,* 429 F. Supp. 2d 1, 7 (D.D.C. 2006) ("[CIPA] creates no new rights or limits on discovery of a specific area of classified information. . .[.] it contemplates an application of the general law of discovery in criminal cases to classified information based on the sensitive nature of the classified information"), *quoting United States v. Yunis,* 867 F.2d 617, 621 (D.C.Cir. 1989). The purpose of CIPA is to protect sensitive national security information, not to impede a defendant's fair trial rights. *See United States v. Stewart,* 590 F.3d 93, 130 (2d Cir. 2009); *United States v. Aref,* 533 F.3d 72, 79 (2d Cir. 2008) (the government's privilege under CIPA "must give way" when classified information is helpful or material to the defense). In fact, prior to enacting CIPA, Congress warned that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without [the] Act." S. Rep. No. 96-823, at 9 (1980).

*Whether the "state secrets" privilege applies.*

Where classified information is discoverable, the third step is to decide whether the "state secrets" privilege applies because: (1) exposure of the evidence would present a "reasonable danger" to national security, and (2) the privilege has been "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Aref,* 533 F.3d at 80 (citation and internal quotation marks omitted).

*Whether the information is helpful or material to the defense.*

If the Court decides to apply the "state secrets" privilege, the final step is to determine whether the information is "helpful or material" to the defense, meaning "useful to counter the government's case or to bolster a defense." *Aref,* 533 F.3d at 80 (citation and internal quotation marks omitted). The Second Circuit has held that, "to be helpful or material to the defense,

evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland,* to disclose exculpatory information. Information can be helpful without being 'favorable' in the *Brady* sense." *Id.* (citations omitted). Where information may be helpful or material, the documents must be provided, but the Court may permit the government to make deletions or substitutions where appropriate. 18 U.S.C. app. 3 § 4.

Section 4 authorizes the Court to receive government pleadings—and by implication to conduct the entire four-step analysis above—*ex parte.* 18 U.S.C. app. 3 § 4. However, because Section 4 states only that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone," *id.* (emphasis added), there exists no categorical impediment to disclosure or adversary proceedings. Nothing in the statute permits the government to make such *ex parte* submissions as a matter of right. Rather, the use of the permissive "may" in the text of Section 4, instead of the mandatory "shall," makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis.

Congress patterned the *ex parte* provision of CIPA § 4 on a similar provision in Federal Rule of Criminal Procedure 16(d)(l), which governs protective orders in criminal cases. Rule 16(d)(1) does not use the words "must" or "shall". It states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. When Rule 16(d)(1) was proposed, Congress amended the language from requiring *ex parte* proceedings at the request of a party, to permitting such proceedings. Moreover, the House Judiciary Committee observed that in determining whether to proceed *ex parte,* a court should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged." Fed.R.Crim.P. 16, Advisory Committee Notes.

By contrast, when Congress intends to require *ex parte* procedures in the national

security setting, it knows how to articulate that mandate. In the Foreign Intelligence Surveillance Act ("FISA"), for example, Congress declared that the Court "shall" review FISA applications, orders, and related materials *ex parte* whenever the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security. *See* 50 U.S.C. § 1806(f) (2000).

### *Ex Parte Treatment Absent Exceptional Circumstances Is Inappropriate.*

The Court should reject the government's *ex parte* submission here.

#### *Ex Parte proceedings are exceedingly disfavored.*

First, the Ninth Circuit has observed that "ex parte proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989), *appeal after remand*, 939 F.2d 758 (9th Cir. 1991). And the Sixth Circuit has cautioned that "[d]emocracies die behind closed doors." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002). *See also United States v. Rezaq*, 899 F.Supp. 697, 707 (D.D.C. 1995) ("[e]x parte communications between a district court and the prosecution in a criminal case are greatly discouraged, and should be permitted only in the rarest of circumstances.")

By their very nature, *ex parte* proceedings impair the integrity of the adversary process. As the Supreme Court has recognized, "'[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights........ No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *United States* v. *James Daniel Good Real Prop.,* 510 U.S. 43, 55 (1993) (absent exigent circumstances, due process clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951 (Frankfurter, J., *concurring*). The Second Circuit has also emphasized the importance of open,

adversary proceedings, declaring that, "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States* v. *Abuhamra,* 389 F.3d 309, 322 (2d Cir. 2004). *See also id*. at 321 ("[*e*]*x parte* submissions may generally *not* be received in opposition to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings"); *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1969 (9th Cir. 1995) (stating in secret evidence case that "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations. ......[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error.") (internal quotation marks and citation omitted).

*The presumption against e*x parte p*roceedings should apply here.*

There is no reason to abandon the usual presumption against *ex parte* proceedings. Here, both counsel are cleared. The government cannot plausibly contend that sharing its Section 4 submission with a cleared counsel under the protections of a CIPA protective order would endanger national security. *See United States v. Libby*, 429 F. Supp.2d at 4-23 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances.") There is no distinction between the sort of clearance granted to defense counsel and to judicial personnel or prosecutors generally. Indeed, cleared defense counsel has already reviewed sensitive classified information produced in cases similar to this one.

*Ex parte* filings without any sort of argument or adversarial proceeding leaves every

defendant in a worse position than he would have been in before CIPA was passed because the defense cannot blindly predict or challenge the government's position. Without access to either the classified evidence or the government's arguments for non-production, Mr. Asainov will be deprived of his right to counsel at this stage and of the other fair trial rights to which he is constitutionally entitled. Sharing the government's CIPA section 4 submission with defense counsel will <u>not</u> result in the unauthorized disclosure of classified information.

If the Court believed it necessary, defense counsel could bound by specific confidentiality orders to further protect any supposed national security concerns, thus ensuring Mr. Asainov due process and adversarial rights.

To the contrary, cleared defense counsel, have passed the same background checks and security vetting as the prosecutors. Cleared defense counsel have the same need to know; in fact more so. Unlike the prosecutors, who argue that CIPA is necessary to protect the "means and method" by which the information, which itself does not implicate national security is proccured, the defense has a responsibility and duty to represent an individual who is potentially facing decades in prison. Access to information, given these facts, is crucial. Finally, providing cleared defense counsel with access to the prosecution's filing will not implicate or compromise national security; neither the document nor the information it contains is shared with those who do not have security clearance. It stands to reason that if counsel have received security clearance – counsel should be able to review the full panoply of evidence to which the government lawyers have access.

The Second Circuit recognizes that allowing defense counsel who "obtain[ed] a security clearance" access to alleged national security material "is consistent with CIPA's imposition on the district courts of a mandatory duty to prevent the unauthorized disclosure of classified information." *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 122 (2d Cir. 2008) (holding defendant's due process rights properly protected, despite his exclusion from all CIPA proceedings,

because his cleared counsel were permitted to attend those proceedings and participate on his behalf). Nothing more is needed here to protect national security.

*The Court should not be Mr. Asainov's surrogate defense counsel.*

The Court cannot effectively function as Mr. Asainov surrogate advocate or defender. First, the Court is simply not a defender. This is especially the case where, as here, the Court has not had an opportunity to review any discovery, meet or speak with Mr. Asainov, or otherwise investigate the facts of this case. The Court cannot be expected to surmise the factual nuances of the defense especially since it has not been part of the defense team, nor has the Court been privy to defense strategies. The variety of charges in the indictment, the probability that portions of the classified material are in Arabic, and the diversity of the potential evidence and witnesses, exacerbate the problem and increase the risk of erroneous judgment and decision. Not because the Court is less capable; but only because the Court is not privy to the material in the entire case.

In deciding whether to close a hearing to the public because of potential classified information the district court in *United States v. Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006), explained that:

> [i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims.

*Id.*, at 921 (internal citation and quotation omitted). Likewise, in *Alderman v. United States*, 394 U.S. 165 (1969), where the Supreme Court addressed the procedures to be followed in determining the impact of a Fourth Amendment violation, it rejected the government's suggestion that the district court make that determination *ex parte* and observed that:

> [a]n apparently innocent phrase, a chance remark, a reference to what

> appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.

*Id*., at 182. In short, as the Supreme Court has recognized, "[i]n our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

Accordingly, it is respectfully submitted that the government should be prohibited from filing its Section 4 application *ex parte*, and that it should be required to disclose the application to cleared defense counsel.

### *The government should be required to disclose its legal arguments.*

Should the Court decide to permit the government's Section 4 submission to remain *in camera*, the Court should require the government to disclose its arguments in support of non-production, and an adversarial hearing should be held. There is no sensible reason why disclosure of the government's arguments would implicate national security, especially when they could be provided to defense counsel subject to protective order. And, argument on the motion could take place in a closed proceeding.

Such a practice has been sanctioned by Second Circuit's opinion in *Abu-Jihaad*. While the Court noted that, "where the government moves to withhold classified information from the defense, an adversarial hearing with defense knowledge would defeat the very purpose of the discovery rules[,]" 630 F.3d at 142, *citing Aref*, 533 F.3d at 81 (internal quotation marks omitted), it also acknowledged that trial judges retain discretion to reject *ex parte* filings under Section 4. Indeed, the Court characterized the defense's opposition as a "challenge to the district

court's exercise of *discretion* to proceed *ex parte*," and reviewed the District Court's decision to accept an *ex parte* filing under an abuse of *discretion* standard. *Id*. at 143 (emphasis added).

The district court in *United States* v. *Libby*, 429 F.Supp. 2d 18 (D.D.C. 2006), *amended by* 429 F. Supp.2d 46 (D.D.C. 2006), also recognized its discretion to reject *ex parte* Section 4 filings. The court established a procedure for evaluating the necessity of an *ex parte* Section 4 filing, requiring that any government submission under Section 4:

> must necessarily include a declaration or affidavit, executed by an intelligence community official with the requisite classification authority, that (1) describes the reasons for the classification of the information at issue; (2) sets forth the potential harm to national security that could result from its disclosure; and (3) explains why the defense, based upon appropriate classification guidelines, does not have a 'need-to-know' the information in its unaltered form."

*Id*. at 25. It added that, "[u]pon receipt of such a filing, the Court will review it and determine whether the filing should remain *ex parte*, or whether all or some portion of it should [be] provided to the defendant." *Id*. *See also Bostan v. Obama*, 674 F.Supp.2d 9, 27 (D.D.C. 2009) (Guantanamo Bay *habeas* case where court adopted the same procedure for evaluating *ex parte* submissions under Section 4). The defense is at enough of a disadvantage without being privy to the facts relevant to the government's CIPA § 4 submission. To exclude defense counsel from the entire CIPA § 4 process is wholly irreconcilable with the adversary system – particularly since counsel have both been cleared. One must ask, why "clear" counsel if they will not have access to CIPA materials. As counsel for Mr. Asainov, we are aware that district courts who have considered this issue have ruled in favor of the government. The Second Circuit has upheld the district court's discretion in allowing *ex parte* proceedings. But, this Court is free to exercise its discretion differently, and given the facts of this case, we urge the

19

Court to do so.

## CONCLUSION

For the foregoing reasons, Mr. Asainov respectfully requests that the Court order the government to produce to defense counsel the materials it has produced to the Court on an *ex parte* basis. At the very least, cleared defense counsel should be allowed to read and respond to the legal arguments made so as to inform the Court's rulings.

        Respectfully submitted,

        Susan Gail Kellman
        Law Offices of Susan Kellman
        25 8th Avenue, Brooklyn, New York 11217

&    Sabrina P. Shroff
        80 Broad Street
        19th Floor
        New York, New York 10004

        Counsel for Ruslan Asainov