DMP/SK/JMH/JGH
F.#2015R00517

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                         19-CR-402 (NGG)

RUSLAN ASAINOV,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCLOSURE
OF GOVERNMENT'S EX PARTE CIPA SECTION 4 SUBMISSION


                   BREON PEACE
                   UNITED STATES ATTORNEY
                   Eastern District of New York
                   271 Cadman Plaza East
                   Brooklyn, New York 11201


Douglas M. Pravda
Saritha Komatireddy
J. Matthew Haggans
Josh Hafetz
Assistant U.S. Attorneys
(Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant Ruslan Asainov's motion to compel disclosure of the government's ex parte filing of its motion pursuant to Section 4 of the Classified Information Procedures Act ("CIPA") and Federal Rule of Criminal Procedure 16(d)(1). As set forth below, ex parte filing is expressly permitted by CIPA, the Federal Rules of Criminal Procedure, and well-established case law, and the Second Circuit recently rejected the argument raised here -- that defense counsel with security clearances were entitled to access the government's CIPA Section 4 filings.

BACKGROUND

The defendant is charged in a five-count indictment with (i) one count of conspiring to provide material support to the Islamic State of Iraq and al-Sham ("ISIS"), a designated foreign terrorist organization, resulting in death, in violation of 18 U.S.C. § 2339B(a)(1); (ii) one count of providing and attempting to provide material support to ISIS in the form of personnel, including himself and others, in violation of 18 U.S.C. § 2339B(a)(1); (iii) one count of providing and attempting to provide material support to ISIS in the form of property and services, including training, expert advice and assistance, weapons and explosives, resulting in death, in violation of 18 U.S.C. § 2339B(a)(1); (iv) one count of receiving military-type training from ISIS in violation of 18 U.S.C. § 2339D(a); and (v) one count of obstruction of justice, in violation of 18 U.S.C. § 1512(b) and (c). See ECF No. 15 (the "Indictment"). These charges arise out of the defendant's conduct in joining ISIS; receiving weapons training; fighting for ISIS, including as a sniper in combat operations against U.S. and U.S.-backed coalition forces; and providing weapons training,

including sniper training, to other ISIS members. The charges against the defendant implicate potentially discoverable classified materials.

Discovery of classified information in federal criminal cases is governed by CIPA. See United States v. Abu Jihaad, 630 F.3d 102, 140-41 (2d Cir. 2010). Congress enacted CIPA to enable the government to fulfill its duty to protect national security information, while simultaneously complying with its discovery obligations in federal criminal prosecutions. See S. Rep. No. 96-823, 96th Cong., 2d Sess., at 3 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4296. Thus, the purpose of CIPA is "to protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial." United States v. Al-Farekh, 956 F.3d 99, 106 (2d Cir. 2020).

On April 2, 2021, the government filed with the Court Information Security Officer an ex parte, in camera motion for a protective order pursuant to CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) (hereinafter, the "Section 4 motion"). On the same day, the government filed on ECF a notice of that filing together with a copy of the file-stamped cover page of that motion. See ECF No. 52.

On February 11, 2022, more than 10 months later, the defendant filed the instant motion, in which he argues that the government should be required "to produce to the defense the materials referenced in ECF Nos. 44 and 45, Notice of Classified Filing, i.e., CIPA section 4" or, in the alternative, provide to cleared defense counsel the government's legal arguments in support of its CIPA 2 application." ECF No. 68 at 1. In responding to this motion, the government assumes that the defense intended to compel the disclosure of the government's Section 4 motion, notice of which was provided in ECF No. 52 (not ECF

2

Nos. 44 and 45) and to seek the legal arguments underlying the Section 4 motion, rather than the Section 2 motion, which was not filed under seal (see ECF No. 28).[1]

## ARGUMENT

I.   Ex Parte Treatment of CIPA Section 4 Filings Is Proper

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. App. 3, § 4.

Section 4 further provides that the United States may demonstrate that the use of such alternatives is warranted through an ex parte, in camera submission to the Court:

> The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

Id. The Second Circuit has held that both CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1) "'authorize ex parte proceedings' and that a 'district court acts well within its discretion in reviewing [CIPA] submissions ex parte and in camera.'" Al-Farekh, 956 F.3d at 107 (quoting Abu Jihaad, 630 F.3d at 143). Indeed, CIPA's legislative history

---

[1] In his motion, the defendant states that the government did not file "a half-sheet noting the actual filing of its ex parte CIPA Section 4 filing." ECF No. 68 at 1. In fact, the government attached to its notice of motion the half-sheet (i.e., the cover page of its motion with classified portion markings removed). See ECF No. 52-1.

3

makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted or deferred. See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980); United States v. Smith, 780 F.2d 1102, 1110 (4th Cir. 1985) (holding that defendant's right to discovery must be balanced against public's interest in non-disclosure).

Similarly, Rule 16(d)(1) of the Federal Rules of Criminal Procedure allows a district court to "permit a party to show good cause by a written statement that the court will inspect ex parte" seeking the entry of a protective order "deny[ing], restrict[ing], or defer[ring] discovery or inspection." Fed. R. Crim. P. 16(d)(1). "The Advisory Committee notes to Rule 16 make clear that 'good cause' includes 'the protection of information vital to the national security.'" United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008) (quoting Fed. R. Crim. P. 16 advisory committee's note to 1966 amendment). Thus, Rule 16(d)(1) provides an independent basis for the Court to permit the ex parte filing of an application for a protective order governing classified discovery upon a showing that said filing promotes "the protection of information vital to the national security." Id.; see also Al-Farekh, 956 F.3d at 107.

Courts in the Second Circuit have consistently held that ex parte, in camera submissions to a district court in matters involving national security are proper. See, e.g., Al-Farekh, 956 F.3d at 107 ("notwithstanding the rarity of ex parte proceedings in criminal matters, there can be no question that a district court's ex parte, in camera adjudication of CIPA motions falls squarely within the authority granted by Congress."); Abu-Jihaad, 630 F.3d at 143 (district court "acted well within its discretion in reviewing [CIPA] submissions ex parte and in camera"); United States v. Stewart, 590 F.3d 93, 132-33 (2d Cir. 2009)

4

(rejecting claim that district court erred in reviewing CIPA materials ex parte and in camera); Aref, 533 F.3d at 81 (same); United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *2 (E.D.N.Y. Feb. 3, 2015) (noting that the government's CIPA Section 4 submission "was appropriately filed ex parte and under seal").

It is for these reasons that district courts within the Second Circuit have universally and uniformly upheld the use of ex parte filings and in camera proceedings in CIPA Section 4 motions. See, e.g., United States v. Chudhary, No. 20-CR-135, ECF No. 47 (E.D.N.Y. Apr. 2, 2021) (Amon, J.); United States v. Kandic, No. 17-CR-449, ECF No. 41 (E.D.N.Y. Jan. 17, 2019) (Garaufis, J.); United States v. Guzman Loera, No. 09-CR-466, ECF Nos. 228 and 681 (E.D.N.Y. May 15 and Nov. 5, 2018) (Cogan, J.); United States v. Shahnaz, No. 17-CR-690, ECF No. 24 (E.D.N.Y. Aug. 8, 2018) (Seybert, J.); United States v. Zhong, No. 16-CR-614, ECF No. 70 (E.D.N.Y. Sept. 6, 2017) (Irizarry, J.); United States v. Lin, No. 15-CR-601, ECF No. 71 (E.D.N.Y. Apr. 6, 2017) (Irizarry, J.); United States v. Al Farekh, No. 15-CR-268, ECF No. 59 (E.D.N.Y. Aug. 23, 2016) (Cogan, J.); United States v. Velentzas, No. 15-CR-213, ECF No. 54 (E.D.N.Y. Aug. 10, 2016) (Johnson, J.); United States v. Harun A Hausa, No. 12-CR-134, ECF No. 90 (E.D.N.Y. Mar. 26, 2016) (Cogan, J.); United States v. Medunjanin, No. 10-CR-019, ECF No. 172 (E.D.N.Y. Feb. 22, 2012) (Dearie, J.); see also United States v. Saipov, No. 17-CR-722, 2019 WL 5558214, at *7 (S.D.N.Y. Oct. 29, 2019) (Broderick, J.); United States v. Schulte, No. 17-CR-548, 2019 WL 3764662, at *7 (S.D.N.Y. July 22, 2019) (Crotty, J.); United States v. Chi Ping Ho, No. 17-CR-779, 2018 WL 6082514, at *4 (S.D.N.Y. Nov. 21, 2018) (Preska, J.); United States v. Ng Lap Seng, No. 15-CR-706, 2017 WL 2715213, at *2 (S.D.N.Y. June 22, 2017) (Broderick, J.); United States v. Mostafa, No. 04-CR-356, ECF No. 233 (S.D.N.Y. Jan. 17, 2014)

(Forrest, J.); United States v. al Fawwaz, et al., No. 98-CR-1023, ECF No. 1317 (S.D.N.Y. Sep. 24, 2013) (Kaplan, J.); United States v. El-Hanafi et al., No. 10-CR-162, ECF No. 94 (S.D.N.Y. Feb. 24, 2012) (Wood, J.).

II.     That Defense Counsel Hold Security Clearances Does Not Entitle Them to Access the Government's CIPA Filings

The defendant correctly notes that CIPA permits, rather than requires, the Court to allow the government to submit its Section 4 motion ex parte.  ECF No. 68 at 4.  The defendant offers a variety of arguments in opposition to ex parte proceedings with respect to the government's Section 4 motion—principally, that defense counsel here hold security clearances and therefore should have access to the government's entire Section 4 motion or, in the alternative, to the government's legal arguments in support of its Section 4 motion.  ECF No. 68 at 6-8, 9-10.  However, that defense counsel may possess a security clearance has no bearing on the propriety of the Court's ex parte review of the government's CIPA Section 4 motion and the discoverability of classified information.

The Second Circuit has recently rejected this exact argument, holding that the notion that defense counsel with security clearances should be able to access the government's classified Section 4 motion "cannot be reconciled with CIPA as enacted by Congress and interpreted by our Court." Al-Farekh, 956 F.3d at 107.[2]  This is true for several reasons.

---

[2] To be sure, Al-Farekh argued that where defense counsel holds an appropriate security clearance, the district court cannot adjudicate CIPA motions ex parte and must give defense counsel access to the classified information.  Here, the defendant argues merely that the district court may permit defense counsel to access the government's Section 4 motion.  But the reasons that the Second Circuit rejected a bright line rule in Al-Farekh are equally applicable to the defendant's motion here.

<u>First</u>, the purpose of <u>ex parte</u> CIPA Section 4 proceedings is to allow the Court to determine whether the classified information at issue is discoverable. If defense counsel could participate in that process, then defense counsel would have access to material to which a court might well determine the defense is not entitled. In other words, "where the government moves to withhold classified information from the defense, 'an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'" <u>Abu-Jihaad</u>, 630 F.3d at 143 (quoting <u>Aref</u>, 533 F.3d at 81). As the district court noted in <u>Abu-Jihaad</u>:

> [T]he purpose of the Government's [CIPA Section 4] Motion is to permit this Court to determine whether the classified information in question is discoverable at all. <u>See</u> <u>United States v. Libby</u>, 429 F. Supp. 2d 46, 47 (D.D.C. 2006) (holding that CIPA § 4 allows the Government to ask the Court to determine that classified information need not be produced at all). If the Court were to conclude that some or all of the information is discoverable, the Government would then need to decide . . . whether to produce the information to defense counsel subject to appropriate security clearance, [or] seek alternate relief under CIPA . . . . If, on the other hand, the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless whether his counsel is willing to submit to security clearance procedures.

<u>United States v. Abu-Jihaad</u>, No. 07-CR-57 (MRK), 2007 WL 2972623, *2 (D. Conn. Oct. 11, 2007), <u>affirmed</u> by <u>Abu-Jihaad</u>, 630 F.3d at 143.

Thus, "[t]he right that [CIPA] section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view." <u>United States v. Campa</u>, 529 F.3d 980, 995 (11th Cir. 2008); <u>see</u> <u>United States v. Sarkissian</u>, 841 F.2d 959, 965 (9th Cir. 1988) (same).

7

Second, the government has several methods to protect national security even when the Court determines that classified material is helpful or material to a defendant. Even when a court makes that determination, CIPA makes clear that the defense is still not entitled to review such material even if defense counsel holds a valid security clearance. Rather, CIPA provides the government with a variety of options to protect sensitive national security information, such as substituting a summary of the classified information, substituting a statement admitting relevant facts that the classified information would tend to prove, and filing an interlocutory appeal. See 18 U.S.C. App. 3, §§ 4, 7; Al-Farekh, 956 F.3d at 107-08. In other words, rather than disclosing the classified information in the form in which it is held, the government is permitted to (among other things) prepare a summary substitution that discloses the information that is helpful and material to the defense but that protects the sensitivity of the information. If defense counsel could participate in the Section 4 proceeding and access the government's classified Section 4 motion, then "the alternative relief authorized in these provisions would be rendered insignificant, if not meaningless." Al-Farekh, 956 F.3d at 108.

Third, classified information may be disclosed only to individuals who both possess the requisite clearance and have a "need to know" the information at issue. See Executive Order 13526, §§ 4.1(a) and 6.1(dd), 75 Fed. Reg. 707, 720, 728–29 (Dec. 29, 2009) (requiring that a "need-to-know" determination be made prior to the disclosure of classified information to anyone, including those who possess a security clearance). Possession of a security clearance neither "mandate[s] an adversary hearing [nor] access to immaterial classified information for which counsel has no legitimate need." United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *3 (E.D.N.Y. June 24, 2011).

8

A defense counsel does not "need to know" classified information that is neither helpful nor material to the defense of his or her client. See United States v. Libby, 429 F. Supp. 2d 18, 24 & n.8 (D.D.C. 2006), as amended, 429 F. Supp. 2d 46 (D.D.C. 2006). In Libby, the district court was called upon to determine whether to permit defense counsel to review the government's CIPA Section 4 motion where defense counsel (and the defendant) held appropriate security clearances. In deciding this issue, the district court emphasized that the key question was not whether defense counsel had the appropriate security clearance, but rather whether defense counsel had both a security clearance and a "need to know." As the court explained, "[i]t is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses." Id. at 24 n.8.

The defendant argues here that his counsel have a "need to know" because of their duty to defend him when he is facing decades in prison. ECF No. 68 at 7. But even cleared counsel do not have a "need to know" classified information submitted to the Court in connection with the government's Section 4 motion before the Court rules that the classified information is helpful or material to the defense. To hold that the Section 4 proceedings themselves provide defense counsel with the need-to-know is a form of bootstrapping that would negate the very purpose of CIPA Section 4. As the Al-Farekh court concluded:

> As a practical matter, because it may well be that the information in a § 4 motion is not discoverable at all, Al-Farekh's theory would permit a defendant represented by counsel with a security clearance to gain access to classified information that would otherwise be unavailable to the defendant. That possibility could

9

>   result in the improper disclosure of information that, by its very
>   nature, may put the national security of the United States at risk.

Al-Farekh, 956 F.3d at 108-09.

Indeed, the defendant in Al-Farekh, like the defendant in this case, also challenged the ex parte nature of the government's Section 4 motion and made the same arguments in support of a similar motion for cleared defense counsel to be given access to the government's Section 4 motion or, in the alternative, its legal arguments. See United States v. Al-Farekh, No. 15-CR-268, ECF No. 51 (E.D.N.Y. July 11, 2016). Judge Cogan rejected that motion, largely for the reasons later articulated by the Second Circuit. See id., ECF No. 59 (E.D.N.Y. Aug. 23, 2016).

For all these reasons, the fact that defense counsel may hold a security clearance does not entitle them to the government's Section 4 motion or legal arguments.

III.   The Defendant's Remaining Arguments in Support of Disclosure Are Wrong

The defendant offers several additional arguments in opposition to ex parte proceedings without recognizing that these arguments, and the authorities cited in support, do not apply in the context of classified materials where protecting national security is a significant concern.

First, the defendant argues that ex parte treatment "[a]bsent [e]xceptional [c]ircumstances" is inappropriate. ECF No. 68 at 5. To the extent that the defendant is arguing that the government must demonstrate "exceptional circumstances" to justify proceeding on an ex parte basis, that argument is contrary to the applicable law and would defeat the very purpose of the applicable discovery rules. Indeed, such a claim that "exceptional circumstances" are required has been appropriately rejected in the CIPA

10

context. See Abu-Jihaad, 630 F.3d at 143 (rejecting defendant's argument that showing of exceptional circumstances is necessary); Libby, 429 F. Supp. 2d at 25 ("First, the Court declines to adopt the defendant's position that he must first have the opportunity to litigate whether the government has established exceptional circumstances before the government can submit to the Court ex parte filings pursuant to Section 4. There is simply no requirement for such a showing in the CIPA, and this Court cannot not judicially require it.").

Second, the defendant cites a presumption that ex parte proceedings are disfavored. While the defendant accurately states the general rule, courts have uniformly found that an exception to the general rule is merited in cases involving classified documents whose disclosure potentially puts at risk the national security. See, e.g., Klimavicius-Viloria, 144 F.3d 1249, 1261 (9th Cir. 1998) ("Ex parte hearings are generally disfavored. In a case involving classified documents, however, ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use to decide the relevancy of the information." (internal citation and quotations omitted)). The defendant presents no authority to the contrary; indeed, the cases he cites in support of the proposition that ex parte proceedings are generally disfavored (see ECF No. 68 at 5-6) do not involve classified discovery or CIPA proceedings.[3]

---

[3] For instance, United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004), involved an ex parte submission in the context of a bail hearing, while American Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045 (9th Cir. 1995), involved an immigration proceeding. In neither case was classified information at issue.

11

Third, the defendant argues that failure to provide his counsel with access to classified ex parte filings would "deprive[]" the defendant "of his right to counsel at this stage and of the other fair trial rights to which he is constitutionally entitled." ECF No. 68 at 7. But courts have consistently rejected the premise that CIPA Section 4's ex parte provision violates the defendant's right to due process or other similar constitutional rights. See, e.g., Klimavicius-Viloria, 144 F.3d at 1261-62 (ex parte CIPA Section 4 hearing does not violate the defendant's right to be present at all phases of trial); United States v. Dumesi, 424 F.3d 566, 577-78 (7th Cir. 2005) (ex parte CIPA Section 4 proceedings did not deny the defendant his right to counsel and fair trial).

Fourth, the defense argues that the Court cannot effectively ensure that the defendant receives all discovery to which he is entitled. In fact, CIPA specifically authorizes the Court to make discovery determinations without any input from the defense. See 18 U.S.C. App. 3, § 4; see, e.g., Zazi, 2011 WL 2532903, at *3. Indeed, there are various statutorily and court-approved instances—of which CIPA is one—whereby discovery determinations requiring judicial imprimatur are made without the provision of input by the defense. For example, the Jencks Act provides that if there is a question as to whether a statement potentially covered by the Act sufficiently relates to the subject matter of a witness's testimony to be rendered discoverable pursuant to the Act, the government should "deliver such statement for the inspection of the court in camera" and the court shall rule on its discoverability. 18 U.S.C. § 3500(c). The procedure prescribed does not allow any opportunity for defense counsel to view the statement or provide the Court with their views as to its discoverability. Similarly, federal courts have held on numerous occasions that the rule established in Brady v. Maryland does not endow a defendant with the right to inspect

12

all evidence which is only potentially, and not actually, exculpatory, and does not grant the defendant the right to assess such evidence's materiality him or herself.  See, e.g., Pennsylvania v. Ritchie, 480 U.S. 39, 59-61 (1987) (holding that while the procedure might deny a defendant "the benefits of an 'advocate's eye,'" a defendant's right to "a fair trial can be protected fully by requiring that [the potentially exculpatory materials] be submitted only to the trial court for in camera review"); United States v. Wolfson, 55 F.3d 58, 60 (2d Cir. 1995) ("A defendant's Brady request for discovery of exculpatory materials . . . does not give the defendant the right to compel the disclosure of documents that are not material for those purposes; nor does it give the defendant the right to assess materiality himself.  To the extent there is a question as to the relevance or materiality of a given group of documents, the documents are normally submitted to the court for in camera review.").

There is no reason why the court cannot be equally effective in the CIPA context.  See, e.g., United States v. Rezaq, 134 F.3d 1121, 1143 (D.C. Cir. 1998) ("We find that the district court did a commendable job of discharging its obligations under CIPA, and in particular that its orders protected [the defendant's] rights very effectively despite the fact that [the defendant's] attorney was unable to participate in the CIPA proceedings.").

13

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny the defendant's motion.

Dated: Brooklyn, New York
       February 23, 2022

>                    Respectfully submitted,
>
>                    BREON PEACE
>                    United States Attorney
>                    Eastern District of New York
>
> By:        /s/
>            Douglas M. Pravda
>            Saritha Komatireddy
>            J. Matthew Haggans
>            Josh Hafetz
>            Assistant United States Attorneys
>            (718) 254-7000

cc:    Clerk of Court (NGG) (via ECF)
       Defense Counsel (via ECF)