UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

RUSLAN MARATOVICH ASAINOV,

Defendant.

MEMORANDUM & ORDER
19-CR-402 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

In this criminal prosecution, Ruslan Asainov is charged with providing and conspiring to provide material support to a foreign terrorist organization, receiving military-type training from a foreign terrorist organization, and obstruction of justice. Pending before the court is the Government's *ex parte* motion for a protective order pursuant to the Classified Information Procedures Act ("CIPA") § 4 and motion *in limine* for an anonymous jury. For the reasons explained below, the Government's motions are GRANTED.

## I. BACKGROUND

The Government commenced its prosecution of Asainov, a United States citizen and former resident of Brooklyn, New York, with a criminal complaint in the Eastern District of New York on July 2, 2018. (*See* Compl. (Dkt. 1).) The Complaint alleged that on December 24, 2013, Asainov boarded a one-way flight to Istanbul, Turkey, a common transit point to obtain entry into Syria. (*Id.* ¶¶ 5-6.) In later communications with a confidential informant ("CI"), Asainov represented that he was in fact in Syria and fighting on behalf of the Islamic State of Iraq and al-Sham ("ISIS"), an alias for al-Qaeda, a recognized Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act. (*Id.* ¶¶ 3, 8, 12, 15-16.) Throughout their correspondence, Asainov attempted to recruit the CI and the CI's family to come

1

to Syria to join ISIS and requested monetary support for military equipment. (*Id.* ¶¶ 13-14.)

Asainov was detained overseas by the Syrian Defense Force ("SDF") and arrived in custody at John F. Kennedy International Airport on July 18, 2019. On September 3, 2019, a grand jury in the Eastern District of New York returned an indictment charging him with conspiring to provide material support and resources to a foreign terrorist organization under 18 U.S.C. § 2339B(a)(1); providing and attempting to provide material support and resources to a foreign terrorist organization in the form of personnel under 18 U.S.C. §§ 2339B(a)(1), (2); providing and attempting to provide material support and resources to a foreign terrorist organization in the form of property and services under 18 U.S.C. §§ 2339B(a)(1), (2); receiving military-type training from and on behalf of a foreign terrorist organization under 18 U.S.C. § 2339D(a), (2); and obstruction of justice under 18 U.S.C. § 1512. (*See* Indictment (Dkt. 15).) In subsequent filings, the Government has claimed that Asainov was a sniper engaged in combat operations against Russian, Syrian and Syrian Democratic Forces, and U.S. and U.S.-backed coalition forces. (Mot. for Anonymous Jury ("Jury Mot.") (Dkt. 65) at 6.) The Government further alleges that Asainov became an "emir," a leader responsible for providing weapons training, including sniper training, to hundreds of ISIS members. (*Id.*) He has been detained since his arrival in the United States in 2019. (*Id.* at 7.)

## II. CIPA § 4 MOTION

On April 2, 2021, the Government filed an *ex parte* motion for a protective order pursuant to CIPA § 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure. (Gov't CIPA Mot. (Dkt. 52).) Though the motion was filed *ex parte*, the Government submitted a "half sheet" of the motion's cover page with markings removed and a proposed order. (*See* Half Sheet (Dkt. 52-1); Proposed Order (Dkt. 52-2).) The court reviewed the Government's

submission and found that the Government's proposal to withhold and substitute certain classified information was proper and that it was appropriate to allow *ex parte* filing and to seal the submission. As a result, the court so-ordered the Government's proposed order, which was filed on April 16, 2021. (Protective Order (Dkt. 53).) The parties, however, overlooked the order. (*See* Mar. 14, 2022 Tr. at 3:24-5:10, 6:21-7:5.) Thus, on February 11, 2022, Asainov filed a motion for the disclosure of materials referenced in the Government's *ex parte* motion pursuant to CIPA § 4. (Def. CIPA Mot. (Dkt. 68)), which the Government opposed. (Gov't Opp. (Dkt. 69).) At a status conference on March 14, 2022, the court decided to treat Asainov's CIPA motion as a request to reconsider the court's prior order on the Government's CIPA motion. (*See* Mar. 14, 2022 Tr. at 11:7-12:15.)

Where discovery involves classified information, CIPA "applies the general law of discovery in criminal cases to classified information and further restricts discovery of that information to protect the Government's national security interests." *United States v. Mostafa*, 992 F. Supp. 2d 335, 337 (S.D.N.Y. 2014).[1] CIPA allows the government to move *ex parte* to "delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. APP. 3 § 4. However, CIPA does not alter "the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *Mostafa*, 992 F. Supp. 2d at 337.

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

3

### A. Whether the Materials Constitute Classified Information

As a threshold matter, the court must find that the materials constitute "classified information," which is defined as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. APP. 3 § 1. The Government is permitted to make this showing "through the submission of a declaration to that effect by a government official, as long as the declaration adequately describes the reasons for the information's classification and the harm that would result from disclosure." *United States v. Juma Khan*, No. 08-CR-621(NRB), 2010 WL 330241, at *1 (S.D.N.Y. Jan. 10, 2010). Based upon its review of the Government's *ex parte* filing, including a fulsome declaration submitted by a United States government official, the court finds that the Government has sufficiently shown that the materials constitute classified information.

### B. Whether the Materials Are Discoverable

If the materials constitute "classified information," the court must assess whether disclosure is appropriate. The Second Circuit employs a three-part test to determine whether the government has made a sufficient showing under CIPA. First, the court must determine whether the materials are discoverable pursuant to Federal Rule of Criminal Procedure 16. *See United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). Under Rule 16, the government is obligated to provide the defense with access to materials if they are "material to preparing the defense," "the government intends to use the item in its case-in-chief at trial," or "the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E). Based upon its review of the Government's *ex parte* submission, the court finds that at least some of the materials

that the Government seeks to withhold or substitute contain classified information that would ordinarily be discoverable.

### C. Whether the States Secrets Privilege Applies

If the materials are in fact discoverable, the court proceeds to consider whether the state-secrets privilege applies. This requires an inquiry into whether "(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged," and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Aref*, 533 F.3d at 80. Upon review of the Government's *ex parte* submission, the court finds that the states secrets privilege applies to the materials that the Government seeks to withhold or substitute, as "there is a real and palpable danger that compelled production of the evidence will expose matters which, in the interest of national security, should not be divulged." *United States v. Al Farekh*, No. 15-CR-268 (BMC), 2016 WL 4444778, at *3 (E.D.N.Y. Aug. 23, 2016) (quoting *Aref*, 533, F.3d at 78-79), *aff'd on other grounds* 956 F.3d 99 (2d Cir. 2020). The Government has also submitted declarations from the appropriate heads of department invoking the privilege and articulating the national security interest at issue. *See United States v. Abu-Jihaad*, 630 F.3d 102, 141 & n.34 (2d Cir. 2010).

### D. Whether the Information is Helpful or Material to the Defense

If the privilege does apply, the court next considers whether the information is helpful or material to the defense. *See Aref*, 533 F.3d at 80. The level of "helpful or material" is below "the level that would trigger the Government's obligation under *Brady* . . . to disclose exculpatory information." *Id.* However, this standard is higher than "a mere showing of theoretical relevance." *Mostafa*, 7 F. Supp. 3d at 338. After careful review of the *ex parte*

5

filing, the court finds that most of the materials that the Government seeks to withhold are neither helpful nor material to Asainov. In fact, much of the classified material that the Government seeks to withhold is duplicative of materials that have already been produced or irrelevant to the issues in this prosecution. *See United States v. Ng Lap Seng*, No. 15-CR-706 (VSB), 2017 WL 2693625, at *3 (S.D.N.Y. June 21, 2017). As a result, it is appropriate to withhold these classified materials under § 4 of CIPA. However, a portion of the classified materials could be considered helpful or material to Asainov, which requires the court to balance his rights with the national security concerns.

### E. Balancing the Defendant's Rights with National Security

It is only if the information is relevant or material to the defense that the court balances the "public interest in protecting the flow of information against the individual's right to prepare his defense." *United States v. Mostafa*, 7 F. Supp. 3d at 338 (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957)). The court must weigh "defendant's need for the information or its value to the defendant" and "possible damage to the government's security interests from disclosure." *United States v. Schulte*, No. 17-CR-548 (PAC), 2019 WL 3764662, at *3 (S.D.N.Y. July 22, 2019). After careful examination, the court finds that disclosure of the limited subset of helpful or material classified information would substantially damage the Government's security interests. "For reasons that are apparent," the court cannot "discuss the specific justifications behind this determination." *Ng Lap Seng*, 2017 WL 2693625, at *3.

Given these grave national security concerns, the Government has proposed to provide a summary substitution to cleared defense counsel. The Government "has undertaken a rigorous review of the material and has applied a generous approach to

6

whether material could be considered exculpatory or impeaching." *Al Farekh*, 2016 WL 4444778, at *3. The summary substitution "disclose[s], in a streamlined fashion, all arguably relevant portions of the underlying material" and thus "retain[s] whatever potential exculpatory or impeachment value the source materials possess." *Id.* The court is sympathetic to the challenges faced by defense counsel in this action and other cases involving classified information, but the court is confident that the summary substitution strikes the appropriate balance of protecting the national security interests of the United States and Asainov's rights in this proceeding.[2]

### F. Consideration of Defendant's Arguments in Favor of Disclosure

Asainov makes several arguments in support of disclosure. First, he argues that *ex parte* procedures are strongly disfavored because they impair the integrity of the adversary process. In making this argument, Asainov highlights that CIPA's statutory language is permissive, which "makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis." (Def. CIPA Mot. at 4.) Though there may be a general presumption against *ex parte* proceedings, in cases involving classified information, "an adversary [proceeding] with defense knowledge would defeat the very purpose of the discovery rules." *Aref*, 533 F.3d at 81 (quoting H.R. Rep. 96–831, pt. 1, at 27 n.22). Both Rule 16(d)(1) and CIPA § 4 authorize the court to conduct *ex parte* proceedings, and "notwithstanding the rarity of *ex parte* proceedings in criminal matters," it is clear that "there can be no question that a district court's *ex parte, in camera* adjudication of CIPA motions falls squarely within the authority

---

[2] The Government argues that Rule 16(d)(1) provides an independent basis for withholding classified materials. The court need not consider this argument because the court has found that CIPA § 4 provides a basis for withholding and substituting the classified materials at issue.

7

granted by Congress." *United States v. Al-Farekh*, 956 F.3d 99, 107 (2d Cir. 2020). Given the sensitivity of the classified information at issue, and the fact that *ex parte* proceedings are explicitly authorized by statute in this context, the court finds that the Government's CIPA § 4 submission was properly filed *ex parte* and under seal, a decision, as Asainov correctly points out, entirely within the court's discretion.

Next, Asainov contends that because his attorneys have security clearance, there would be no danger to national security. (Def. CIPA Mot. at 6-8.) He explains that "[t]he Second Circuit recognize[d] that allowing defense counsel who 'obtain[ed] a security clearance' access to alleged national security material 'is consistent with CIPA's imposition on the district courts of a mandatory duty to prevent the unauthorized disclosure of classified information.'" (*Id.* at 7-8 (quoting *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 122 (2d Cir. 2008).) However, the Second Circuit did not hold that cleared defense counsel were entitled to classified information; rather, it upheld the district court's decision to limit classified information to persons with security clearance, including cleared defense counsel, and not to allow the defendant, who was not cleared, to access the materials. The more relevant case on this question is *United States v. Al-Farekh*, in which the defendant argued on appeal "that the District Court was required to provide him with access to the Government's filings because his counsel had the requisite security clearance." 956 F.3d at 106. The Second Circuit held that defendant's "proposed rule" that would limit a court's "authority to review classified information *ex parte* only where defense counsel lacks a security clearance . . . cannot be reconciled with CIPA as enacted by Congress and interpreted by our Court." *Id.* at 107. The Second Circuit reasoned that the language of the statute, the legislative history, and practical considerations all supported the longstanding holding that the decision to withhold

8

classified information is within the discretion of the district court notwithstanding the cleared status of defense counsel.

Here, Asainov asks the court not to adopt the bright-line rule rejected in *Al-Farekh*, but to consider the fact of his attorneys' cleared status in making its CIPA determination. However, even if a person has "appropriate security clearance," he or she "may not have access to classified information if" he or she does not "need to know" the information. *Id.* at 109 n.19; *see also* Exec. Order 13526, §§ 4.1(a) and 6.1(dd), 75 Fed. Reg. 707, 720, 728–29 (Dec. 29, 2009) (setting forth the criteria for accessing classified information, which includes that "the person has a need-to-know the information"). If having security clearance on its own was sufficient to access any classified information, the United States government would be unnecessarily putting classified information at risk. Since, as described in the previous section, most of the classified materials are neither helpful nor material, and for the potentially helpful or material information, the substitution conveys the potential value of the classified materials to Asainov, the court finds that defense counsel do not "need to know" this information, and thus disclosure is not appropriate. Asainov asks hyperbolically why defense counsel even bother getting cleared, but this ignores the fact that the court's decision is limited to the subset of classified information at issue in this application. In fact, the Government has not sought to withhold all classified materials in this case, and there will be classified discovery. Relatedly, Asainov asserts that denying him access to this set of classified information would deprive him of his right to counsel and other constitutional rights, but he has not identified any cases in support of this position.

Finally, Asainov asserts that the court cannot be his surrogate lawyer, as it is not privy to the nuances of his defense and all the evidence that has been exchanged in this case. But as is clear from the case law, it is well accepted that courts are equipped to

9

handle this inquiry and, as Asainov maintains, the court has discretion in making these decisions. Certainly, there might be classified information that the court would need to seek input from Asainov on to assess helpfulness and materiality, but that is not the case here. CIPA § 4 gives this court authority to allow classified information to be withheld or substituted, and Asainov's arguments do not persuade the court that classified information should be disclosed here.

In the alternative, Asainov argues that if the court decides that the Government's submissions should remain *ex parte*, the court should require the Government to disclose its arguments in support of non-production and hold an adversarial hearing, which he maintains would not implicate national security. (Def. CIPA Mot. at 9-10.) Asainov represents that this practice has been "sanctioned" by the Second Circuit. (*Id.* at 9.) However, by Asainov's own admission, the Second Circuit merely acknowledged that the district court had acted within its discretion in issuing a protective order pursuant to CIPA § 4, and it did so *without* holding an adversary proceeding. *See Abu-Jihaad*, 630 F.3d at 143. The panel held that because "the government's submissions fully support the district court's entry of the challenged CIPA orders," the district court acted within its discretion to review those submissions *ex parte* and *in camera*. *Id.* Here too, based on the Government's submission, the court has elected to exercise its discretion to keep this submission *ex parte*, including the legal arguments.

### III. MOTION FOR AN ANONYMOUS JURY

The Government seeks to prevent disclosure of venire and petit jurors' names, addresses, and workplaces. (Jury Mot. at 11.) The Government argues that the jurors need to be protected based on the serious charges against Asainov, risks to the judicial process, and publicity surrounding the case, and that an anonymous jury, which is commonly used in terrorism cases, will not prejudice

10

him. In response, Asainov argues that a terrorism trial is not a sufficient condition for empaneling an anonymous jury, which hinders his constitutional rights, and the Government has not shown the need for an anonymous jury beyond conclusory allegations. (Def. Opp. (Dkt. 70).)

Criminal defendants are entitled to a series of fundamental constitutional rights, including an impartial jury and the presumption of innocence. *Coffin v. United States*, 156 U.S. 432, 453-54 (1895). Anonymous juries, "when genuinely called for and when properly used," do not infringe upon these rights. *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012). A district court may empanel an anonymous jury where (1) "there is strong reason to believe that the jury needs protection," and (2) the court takes "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013).

### A. Whether the Jury Needs Protection

To assess whether the jury needs protection, courts in the Second Circuit consider the following factors:

> (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the judicial process by himself or through his associates; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair.

*United States v. Kandic*, 17-CR-449 (NGG), 2021 WL 5505832, at *2 (E.D.N.Y. Nov. 24, 2021). These factors are analyzed in turn.

11

1. Seriousness of the Charges & Dangerousness of the Defendant

Courts often analyze the first two factors, seriousness of the charges and dangerousness of the defendant, together. *See United States v. Pugh*, 150 F. Supp. 3d 218, 223 (E.D.N.Y. 2015). A court is not required to empanel an anonymous jury based on "the nature of the charges" alone, *id.*, or the fact that a defendant is a member of a terrorist organization. *See United States v. Khan*, 591 F. Supp. 2d 166, 170 (E.D.N.Y. 2008). While some courts have found that the seriousness of charges and dangerousness of defendants alone justify empaneling an anonymous jury, as when a defendant is accused of violent crimes and faces "considerable time in prison," *United States v. Scala*, 405 F. Supp. 2d 450, 452 (S.D.N.Y. 2005), courts are more likely to find that an anonymous jury is appropriate where there is some indication that these factors relate to possible jury tampering or obstruction. *See, e.g., United States v. Mostafa*, 7 F. Supp. 3d 334, 338 (S.D.N.Y. 2014) ("[N]one of the charges against this defendant involves obstruction of justice or otherwise impeding the judicial process."); *United States v. Mayes*, No. 12-CR-385 (ARR), 2013 WL 6175824, at *4 (E.D.N.Y. Nov. 25, 2013) (finding that the jury hearing evidence about "past alleged incidents of jury and witness tampering . . . in combination with the violent nature of the charges, could lead jurors to fear for their safety unless their identities are kept anonymous").

The Government argues that this case involves serious charges, and that "[c]ourts in this district have regularly approved anonymous juries in cases involving similarly serious charges . . . , includ[ing] cases with potential penalties less severe than the potential life sentence here." (Jury Mot. at 15.) The Government further notes Asainov's continued support of ISIS and refusal to participate in court proceedings. In response, Asainov contends that "the mere incantation of words such as 'terrorist,' 'terrorism,' 'al Qaeda,' 'Bin Laden,' and '9/11' is *insufficient* to require

12

an anonymous jury" and that the court must find some likelihood of obstruction in order to empanel an anonymous jury. (Def. Opp. at 2 (collecting cases).)

While the court disagrees that obstructive conduct is required by the case law in this Circuit, the court generally agrees that the first factors do not weigh in favor of empaneling an anonymous jury. Recently, in a similar case involving one of Asainov's co-conspirators, *United States v. Kandic*, this court considered the appropriateness of an anonymous jury. It found the Government's argument about the seriousness of the charged crimes to be "unpersuasive." 2021 WL 5505832, at *3. This was in large part because the defendant had pointed out that "he is unlikely to present a threat to jurors" because "he is under severely restrictive conditions while in detention," his limited calls "are monitored by federal agents," and "he lacks associates in the United States." *Id.* Here, Asainov faces similar charges and is similarly under watch at the MDC and lacking in United States contacts. Asainov is subject to "Special Administrative Measures" custody, is permitted only to contact his mother, and all calls are monitored in real-time. (Def. Opp. at 2.) Consequently, the court is similarly unpersuaded that the first two factors weigh in favor of an anonymous jury.

2. Interference with the Judicial Process

To assess whether there is a risk of interference with the judicial process, courts will consider "(1) the track record, if any, of the defendants (or their associates) interfering with the judicial process, and (2) whether jurors would reasonably fear retaliation for their involvement in the trial." *Kandic*, 2021 WL 5505832, at *3 (citing *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995)). With respect to the first factor, "[a]n obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in [Second Circuit] decisions regarding anonymous juries." *United States v. Vario*, 943 F.2d 236, 240 (2d

13

Cir. 1991); *see also United States v. Blackshear*, 313 F. App'x 338, 343 (2d Cir. 2008) (summary order) (affirming decision to empanel anonymous jury where defendant had "consistently attempted to obstruct justice," including by "intimidating witnesses," even where "none of [defendant's] prior incidents involved jurors").

The Government points out that Asainov has been charged with obstruction, "specifically, with threatening violence against an individual to prevent him/her from providing information to law enforcement, deleting electronic communications and destroying his cellular phone to prevent the recovery of evidence of his support for ISIS." (Jury Mot. at 17.) Additionally, the Government notes his "contempt for this Court and the judicial system generally." (*Id.* at 18.) In response, Asainov contends that he has made no threats, has merely "taken the position that he wants nothing whatsoever to do with this prosecution," and "has no ability to interfere with the judicial process – either personally or by way of any imagined associates." (Def. Opp. at 2.)

The court agrees with the Government that Asainov's track record of interfering with the judicial process weighs heavily in favor of an anonymous jury. Asainov has intimidated witnesses in this case. For example, he told one individual that ISIS would "fucking kill you," and the individual should be "fucking scared for the rest of your life" and warned said individual not to open his or her "infidel" mouth. (Jury Mot. at 8.) As a result of these threats and other efforts to impair the Government's investigation, Asainov is charged with obstruction of justice, which is a "crucial factor." *Vario*, 943 F.2d at 240.

With respect to juror concerns about retaliation, courts have found that an anonymous jury is appropriate where "jurors' impartiality may be affected by a reasonable fear of reprisal," due to "defendants' dangerousness, their organized crime connections, and their history of violence." *Kandic*, 2021 WL 5505832,

14

at *3 (citing *United States v. Thomas*, 757 F.2d 1359, 1364 (2d Cir. 1985)); *see also United States v. Muyet*, 945 F. Supp. 586, 593 (S.D.N.Y. 2006) ("The Court finds that . . . the . . . acts of violence charged in the indictment strongly support the empaneling of an anonymous jury because they would cause a juror to reasonably fear for his or her own safety."). "[E]ven a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict." *See Thomas*, 757 F.2d at 1364. The Government contends that jurors will fear retaliation, as they are aware of this major terrorist organization, and Asainov "is charged with recruiting and fighting for ISIS, and training approximately 100 of its snipers, who the defendant himself claims killed and died for [ISIS]." (Jury Mot. at 19.) In response, Asainov argues that case law in this circuit requires a finding that ISIS has tampered with jurors in the past because his ISIS membership is not sufficient to empanel an anonymous jury and that "courts in the Second Circuit have held terrorism trials for decades without a single instance of a terrorist trying to enter any courthouse to intimidate or otherwise harm a juror," in contrast to organized crime groups in the United States. (Def. Opp. at 4.)

However, this factor hinges on the expectations of a reasonable jury. The average juror, in learning that Asainov fought for ISIS, recruited for ISIS, and trained its snipers, could reasonably "fear that their identities could be disclosed online, exposing them to threats from individuals who are not directly associated with Defendant." *Kandic*, 2021 WL 5505832, at *4. Furthermore, as in *Kandic*, "Defendant's position—that he cannot in fact threaten or harm jurors, either directly or indirectly—is inapposite." *Id.* This is because the factor does not require the court to inquire into the defendant's actual dangerousness—the first factor—but into whether it would be reasonable for the jurors to fear retaliation. In previous cases, this court has found that the reach of social media means that "the threat posed by

15

[ISIS] is not limited by its geographic control, or indeed its members, but instead can extend to sympathetic lone-wolves." *Pugh*, 150 F. Supp. 3d at 224-25. Asainov even went as far as informing a confidential informant that "some people" had visited the individual after he threatened this individual. (Jury Mot. at 8.) Given Asainov's connection to ISIS, the breadth of ISIS's global reach, and his history of dangerous crimes and obstruction, a reasonable juror's impartiality might be affected by fear of reprisal. Accordingly, the risk to judicial integrity weighs strongly in favor of precautionary measures.

### 3. Attention from the Public and the Media

The possibility of media and public attention can also "militate in favor of an anonymous jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." *Vario*, 943 F.2d at 240. To assess this factor, courts look to whether there has been "press involvement in or attention to the case" or the Government has shown "that its subject matter is likely to appeal to the public interest." *Kandic*, 2021 WL 5505832, at *4; *see also United States v. Ahmed*, No. 12-CR-661 (SLT), 2014 WL 6983438, at *3 (E.D.N.Y. Dec. 10, 2014) ("This Court has reviewed the evidence of pre-trial press coverage in this case and finds it sufficiently extensive to suggest that the media will continue taking an interest in this case, which could potentially expose the jurors to intimidation or harassment.").

The Government has provided numerous examples of "[m]ajor media sources" that have reported on this case. (Jury Mot. at 20.) However, the Government "relies on articles published . . . around the time of his arrest," which was nearly three years ago. *Kandic*, 2021 WL 5505832, at *4. The Government also points to the fact that there are fewer trials currently in progress in New York because of the COVID-19 pandemic, which may increase media attention. (Jury Mot. at 21.) Asainov argues that this case

16

has not generated public media attention since the articles published around the time of his arrest, which were all triggered by the Government's press release. (Def. Opp. at 4.) However, the court has identified an article describing some of Asainov's antics while incarcerated in the MDC from March 2021 and his refusal to recognize the United States justice system.[3] The anecdotes in the article appear to come from court proceedings and filings as opposed to press releases from the Government. While the court is inclined to agree with Asainov that the Government cannot release a statement and then cry wolf about press coverage, the same cannot be said for media coverage of court proceedings and filings. If Asainov continues with these antics during his trial, such as creating a makeshift ISIS flag in his cell, throwing hot liquid at a guard at the MDC, and singing a song during a court proceeding, (*see* Jury Mot. at 11), it would not be surprising to see additional press coverage of this case. Accordingly, the potential media and public interest in this case weigh modestly in favor of empaneling an anonymous jury.

### B. Reasonable Relief and Mitigating Precautions

If a court finds "that there is a strong reason to believe the jury needs protection," the court must "tak[e] reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Napout*, 963 F.3d 163, 189 (2d Cir. 2020). "A district court minimizes the prejudicial effects of an anonymous jury on the defendant by giving the jurors a plausible and nonprejudicial reason for not disclosing their identities' and by conducting a *voir dire* designed to uncover bias." *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013). Empaneling an anonymous jury in this

---

[3] Noah Goldberg, *Accused Terrorist Found with Makeshift ISIS Flag in his Jail Cell: Prosecutors*, N.Y. Daily News (Mar. 4, 2021), https://www.nydailynews.com/new-york/nyc-crime/ny-accused-isis-flag-sniper-nyc-20210304-cvzyaouesrd7tmuqx3oqp7c44e-story.html

case is a narrowly tailored solution to address the primary risks that the court has identified—the risk to the integrity of the judicial process, as well as the more modest risk of media and public attention. The juror's concerns about retaliation will be mitigated by the knowledge that their identities will remain anonymous. *See Kandic*, 2021 WL 5505832, at *4 ("Anonymity protects against disclosure of the jurors' identities, which is the central risk that jurors may reasonably fear in this case.").

Given that the court has identified two factors weighing in favor of an anonymous jury, one of which is the key factor of judicial interference, the court will empanel an anonymous jury for this trial. The court will mitigate any prejudice to the defendant with "the use of meaningful *voir dire* and a neutral jury instruction that explains that the purpose of empaneling the anonymous jury to maintain their personal privacy and ability to render a fair verdict." *Id.* at *5.

## IV. CONCLUSION

For the reasons stated above, the Government's motions are GRANTED. The Government shall produce to defense counsel the summary substitution described in its submission forthwith.

SO ORDERED.

Dated:   Brooklyn, New York
         August 2, 2022

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge